**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| LUCINDA SWATZELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-CV-00262 JAR |
| ) | |
| THE BOARD OF REGENTS, ) | |
| SOUTHEAST MISSOURI STATE ) | |
| UNIVERSITY ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, or in the alternative, Motion to Dismiss Count II and Strike Plaintiff's Prayer for Relief Under Count III (Doc. No. 23). The Motion is fully briefed and ready for disposition.

**I.  Background**

Plaintiff Lucinda Swatzell brings this action against Defendant, the Board of Regents of Southeast Missouri State University, asserting claims of disability discrimination, due process violations, breach of contract, and retaliation. Plaintiff was a tenured professor at Southeast Missouri State University from August 2000 until January 14, 2015, when her employment was terminated based on a student complaint alleging sexual harassment and retaliation (Second Amended Complaint ("SAC"), Doc. No. 21 at ¶¶ 13, 14, 16-18). Plaintiff suffers from "schizoaffective disorder," which causes delusions, hallucinations, depression, periods of manic mood, impaired communication, and impaired occupational, academic and social functioning (SAC at ¶ 29). Plaintiff informed her Department Chair of her condition and that she was taking

psychotropic drugs to lessen her symptoms (SAC at ¶ 30). She alleges she was treated differently after notifying her Department Chair of her medical condition (SAC at ¶ 37).

Defendant conducted an investigation into the student's complaint, which included interviewing Plaintiff (SAC at ¶¶ 26, 27). Plaintiff alleges she was unable to respond to questions relating to the investigation due to her medical condition and because her medication did not adequately control her condition (SAC at ¶¶ 33, 34). She requested additional time to respond to the investigation and to retain counsel to assist her with "formulating a coherent response" as part of a request for accommodation (SAC at ¶ 35), but her request was denied (SAC at ¶ 36). Plaintiff alleges she was unlawfully denied an accommodation and terminated because of her disability (SAC at ¶¶ 38-40).

Plaintiff further alleges she was deprived of her property interest in her continued employment at the University as a tenured professor without due process. Specifically, Plaintiff contends the Faculty Handbook governs the process due her and other tenured faculty subject to termination, including the right to adequate prior notice of the proposed disciplinary action, to be represented by counsel, to present evidence in support of her position, to call supporting witnesses and cross-examine adverse witnesses, as well as the right to "an unbiased tribunal decision based on the evidence." (SAC at ¶¶ 46-60). Plaintiff claims that by failing to follow the guidelines of the Faculty Handbook, Defendants breached their contractual relationship with her (SAC at ¶¶ 70-79).

On January 25, 2017, Plaintiff filed a Second Amended Complaint asserting claims of disability discrimination under the Americans with Disabilities Act of 1990 (ADA) and the Missouri Human Rights Act (MHRA) (Count I), due process violations (Count II); breach of contract (Count III); and retaliation (Count IV). Defendant moves to dismiss Plaintiff's claims

under Rules 12(b)(1) and 12(b)(6) on the grounds that her claims are barred by Eleventh Amendment immunity and fail to state a claim. Alternatively, Defendant moves to dismiss Count II for failure to state a claim and to strike Plaintiff's prayer for attorney's fees under Count III.

## II.  Legal standard

A motion to dismiss on Eleventh Amendment immunity grounds is a challenge to the court's subject matter jurisdiction over the action and governed by Rule 12(b)(1). See Lors v. Dean, 746 F.3d 857, 861 (8th Cir. 2014); Walls v. Bd. of Regents of Se. Mo. State Univ., No. 1:09CV35 RWS, 2009 WL 2170176, at *1 (E.D. Mo. July 20, 2009). A court has broad authority to decide its own right to hear a case, and can consider matters outside of the pleadings when deciding a "factual attack" under Rule 12(b)(1). Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990); see Ozark Society v. Melcher, 229 F. Supp.2d 896, 902 (E.D. Ark. 2002) (explaining that a "factual attack" challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings). Under a factual attack, it is the plaintiff's burden to establish that jurisdiction exists, and "no presumptive truthfulness attaches to the plaintiff's allegations." Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In other words, the non-moving party does not have the benefit of Rule 12(b)(6) safeguards in a factual attack. Id. at 729 n. 6. As Defendant has attached and referenced materials which are outside of the pleadings, the Court will consider Defendant's motion to be a factual attack on Plaintiff's complaint. See Shipley v. Interstate Collections Unit, No. 11-675-CV-W-FJG, 2011 WL 6256967, at *2 (W.D. Mo. Dec. 14, 2011).

## III.  Discussion

The Eleventh Amendment provides that states are immune from suit in federal court, unless the state has consented to be sued, or Congress has abrogated the state's immunity by

some express statutory provision.[1] Raymond v. Bd. of Regents of Univ. of Minn., 140 F. Supp. 3d 807, 813 (D. Minn. 2015), aff'd sub nom. Raymond v. Bd. of Regents of the Univ. of Minn., 847 F.3d 585 (8th Cir. 2017) (citing Will v. Mich. Dep't. of State Police, 491 U.S. 58, 66-67 (1989)); Egerdahl v. Hibbing Cmty. Coll., 72 F. 3d 615, 619 (8th Cir. 1995)). Eleventh Amendment immunity applies with equal force to pendent state law claims. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984), *superseded by statute on other grounds*.

There are three exceptions to Eleventh Amendment immunity: (1) where the state waives immunity by consenting to suit in federal court; (2) where Congress abrogates the state's immunity through valid exercise of its powers; and (3) under Ex parte Young, 209 U.S. 123 (1908), where the plaintiff files suit against state officials seeking prospective equitable relief for ongoing violations of federal law. Keselyak v. Curators of the University of Missouri, 200 F. Supp. 3d 849, 854 (W.D. Mo. 2016) (citing Sundquist v. Nebraska, 122 F. Supp. 3d 876 (D. Neb. 2015)).

"The Eleventh Amendment encompasses not only actions where the state is actually named as a defendant, but also certain actions against state instrumentalities." Id. (quoting Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999)). In accordance with this principle, the Eighth Circuit has stated that "State universities and colleges almost always

---

[1] The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI.

Although on its face the Eleventh Amendment applies only to actions brought by citizens of other states, the Supreme Court has interpreted it to bar actions in federal court by a state's *own* citizens. See Hans v. Louisiana, 134 U.S. 1, 15 (1890); Cardoso v. Bd. of Regents of the Univ. of Minnesota, 205 F. Supp. 3d 1046, 1049 (D. Minn. 2016)

- 4 -

enjoy Eleventh Amendment immunity." Id. (quoting Hadley v. N. Arkansas Cmty. Tech. Coll., 76 F.3d 1437, 1438 (8th Cir. 1996)). Whether a university actually enjoys Eleventh Amendment protection, however, must be determined on a case-by-case basis. Sherman v. Curators of Univ. of Mo., 16 F.3d 860, 863 (8th Cir. 1994) (citing Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985)). To make this determination, a court must examine the amount of the university's local autonomy and control, and most importantly, whether any judgment rendered against the university would ultimately be paid out of state funds. Id. (quoting Laje v. R.E. Thomason Gen. Hosp., 665 F. 2d 724, 727 (5th Cir. 1982)).

Defendant asserts it lacks sufficient autonomy from the state (Doc. No. 24 at 3-5). The Missouri Legislature created Southeast Missouri State University, see RSMo. § 174.020, and requires it to submit to detailed reporting procedures. In particular, the University must make an annual report to the Missouri Department of Higher Education of "all receipts of moneys from appropriations, incidental fees, and all other sources, and the disbursements thereof, and for what purposes, and the condition of said college." RSMo. § 174.170. The Missouri Legislature has defined standards by which the University may remove its presidents and faculty, RSMo. § 174.150, and restricts the University's ability to independently appoint its own Board of Regents, RSMo. § 174.060. Based on an identical record, the University's sister school, Central Missouri State University, was found to lack sufficient autonomy from the state." Canada v. Thomas, 915 F. Supp. 145, 148 (W.D. Mo. 1996) ("In light of the state's continuous attention to CMSU's affairs, CMSU's dependence on state funding, and the control held by the state's Governor, this Court finds that CMSU does not enjoy a significant level of autonomy from the state."). The Court concurs in Canada's reasoning and likewise finds that Defendant lacks sufficient autonomy from the state.

Defendant further asserts that a money judgment against it would ultimately be paid by the State treasury because the Missouri Legislature is required by Article IX sec. 9(b) of the Missouri Constitution to financially maintain the state universities. (Doc. No. 24 at 5-6). Defendant argues that a payment of any judgment against the University would decrease its financial resources and increase its budgetary requests to the General Assembly, which must be paid by the Missouri treasury. Thus, a judgment against the University would ultimately be paid from state funds. (Id.) In support of its motion, Defendant has filed an affidavit of the Vice President of Finance and Administration at Southeast Missouri State University (Affidavit of Kathy Mangels ("Mangels Aff."), Doc. No. 27-1), who states that the University received approximately 41% of its general operating budget for the 2015-16 fiscal year from State appropriations and is "fundamentally dependent" upon the State of Missouri for its core operating expenses (Id. at ¶¶ 5, 6). Further, the University is covered by the State Legal Expense Fund established pursuant to RSMo. § 105.711, which consists of moneys appropriated to the Fund by the Missouri State General Assembly. The statute provides coverage to the University for any claim or final judgment rendered against it. Because such claims are paid directly from the Fund, "any judgment rendered against the University will necessarily affect the State Treasury." (Id. at ¶¶ 7-10). In light of this unrebutted affidavit, the Court finds that a judgment against Defendant would affect the state treasury. See Canada, 915 F. Supp. at 148. Therefore, unless an exception applies, Plaintiff's claims against Defendant are barred by Eleventh Amendment immunity.

As set forth above, there are three possible exceptions to Eleventh Amendment immunity: (i) waiver or consent to suit by the state; (ii) valid abrogation by Congress; or (iii) the state's amenability to suit under the Ex parte Young doctrine. Keselyak, 200 F. Supp. 3d at 854.

To the extent Plaintiff argues Defendant waived its immunity and submitted itself to the jurisdiction of this Court by filing an amended answer noting that the Board of Regents, Southeast Missouri State University, not the University itself, was the proper defendant (Doc. No. 31 at 6), the Eighth Circuit has rejected such an argument. Id. 855 n.4 (citing Skelton v. Henry, 390 F.3d 614, 618 (8th Cir. 2004); Fromm v. Comm'n of Veterans Affairs, 220 F. 3d 887, 890 (8th Cir. 2000)). The Ex parte Young doctrine does not apply here because Plaintiff has not sued a state employee acting in his or her official capacity. Keselyak, 200 F. Supp. 3d at 856.

**Federal claims**

With respect to abrogation, the Supreme Court has already established that claims against states and their agencies for employment discrimination (Title I) under the ADA are barred by Eleventh Amendment immunity. Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 360 (2001).[2] In Count I of her complaint, Plaintiff alleges she was unlawfully denied an accommodation and terminated because of her disability (SAC at ¶¶ 35-40). Plaintiff argues she does not specify whether her claims are brought under Title I or Title II of the ADA, and that in the event the Court determines she cannot maintain her action under Title I, a claim under Title II remains viable (Doc. No. 31 at 6).[3]

The Eighth Circuit has not decided whether Title II applies to employment discrimination cases filed against public employers, and the circuits that have addressed this question are split. Bradley v. Little Rock Wastewater Util., 517 F. App'x 530, 533 (8th Cir. 2013) (citing Garrett,

---

[2] Title I of the ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

[3] Title II of the ADA prohibits discrimination in access to or participation in services, programs, or activities of a public entity. 42 U.S.C. § 12132.

531 U.S. at 360 n. 1 (2001) (noting, without resolving, the circuit split); Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1178 (9th Cir. 1999) (holding that Title II does not state a cause of action for employment discrimination); Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist., 133 F.3d 816, 825 (11th Cir. 1998) (holding that Title II does state a cause of action for employment discrimination)). Even construing Plaintiff's claim as one under Title II, however, the Supreme Court has recognized only two specific areas where Title II validly abrogates sovereign immunity, namely: (1) suits which implicate the right of access to court proceedings, Tennessee v. Lane, 541 U.S. 509, 531, 533-34 (2004); and, more broadly, (2) suits which address conduct that is in itself unconstitutional, U.S. v. Georgia, 546 U.S. 151, 157-58 (2006)[4], neither of which are implicated here.

Plaintiff further alleges Defendant retaliated against her opposition to their discriminatory conduct by terminating her in violation of Title VII (FAC at ¶¶ 85-87). Title VII makes it unlawful for an employer to discriminate against an employee based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-3(a). Discrimination against an individual with a disability is not actionable under Title VII. Id. For that reason, a claim of retaliation in connection with disability discrimination cannot be brought under Title VII. Morr v. Missouri Dep't of Mental Health, No. 4:08CV359 RWS, 2009 WL 1140108, at *6 (E.D. Mo. Apr. 28, 2009) (citing Miles v. University of Arkansas System, 2008 WL 1781098, *4 (E.D. Ark. April 16, 2008)).

---

[4] In Georgia, the Court considered the claims of a disabled inmate who alleged he was denied accommodation during his imprisonment by the state. Georgia, 546 U.S. at 154-55. The inmate claimed the conditions of his confinement violated not only the ADA, but also his eighth amendment right to be free from cruel and unusual punishment (a right made applicable to the states by the due process clause of the fourteenth amendment). The Supreme Court said there was no doubt that Congress can abrogate sovereign immunity for conduct that actually violates the fourteenth amendment. Id.

To the extent Plaintiff is alleging an ADA retaliation claim under Title V[5], the Court notes that neither the Supreme Court nor the Eighth Circuit has decided whether Title V abrogates a state's Eleventh Amendment immunity. Lors, 746 F.3d at 862-63. However, numerous courts have interpreted the Supreme Court's holding in Garrett as necessarily applying to retaliation claims premised on employment discrimination under Title I of the ADA. See Levy v. Kan. Dep't of Soc. & Rehab. Servs., 789 F.3d 1164, 1169 (10th Cir. 2015); Demshki v. Monteith, 255 F.3d 986, 988–89 (9th Cir. 2001); see also Reed v. College of the Ouachitas, No. 6:11–CV–6020, 2012 WL 1409772, *5 (W.D. Ark. April 23, 2012) (noting that Supreme Court precedent supports a conclusion that Congress may not abrogate the states' Eleventh Amendment immunity from claims brought pursuant to Title V of the ADA); Morr, 2009 WL 1140108 at *4 (finding Title V claim for damages barred by the Eleventh Amendment). Although Plaintiff's complaint is unclear, it appears that her claim of retaliation is based on actions she took to oppose an alleged violation of Title I of the ADA, namely, the alleged failure to accommodate her disability. The Court concurs in the rulings of these courts that retaliation claims brought under Title V of the ADA – at least where the claims are based on alleged violations of Title I – are barred by the Eleventh Amendment. Certainly, Plaintiff has made no argument that the Court should treat her two ADA claims differently for purposes of its Eleventh Amendment immunity analysis.

**State law claims**

As previously discussed, the Eleventh Amendment bars federal court actions against a state or its agencies unless the state waives its immunity or Congress abrogates it. Will, 491 U.S. at 63. A state "is deemed to have waived its immunity only where stated by the most express

---

[5] Title V of the ADA defines explicit restrictions against retaliation or coercion against anyone with a disability who exerts their civil rights. 42 U.S.C. § 12203(a).

language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Cooper v. St. Cloud State University, 226 F.3d 964, 968-69 (8th Cir. 2000) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)). With respect to Plaintiff's state law claim under the MHRA, neither her complaint nor her response to Defendant's motion to dismiss points to any statute which shows that Missouri clearly waived its immunity to be sued in federal court on this claim. Although the MHRA provides for actions in Missouri circuit courts, the statute does not authorize actions in federal court. Coller v. State of Mo., Dep't of Econ. Dev., 965 F. Supp. 1270, 1274 (W.D. Mo. 1997); Mo. Rev. Stat. § 213.111.1. See also Cardoso v. Bd. of Regents of the Univ. of Minnesota, 205 F. Supp. 3d 1046 (D. Minn. 2016) (holding Eleventh Amendment barred former employee's action against university's board of regents alleging that non-renewal of his contract violated Minnesota Human Rights Act (MHRA)); Cooper, 226 F.3d at 968 (affirming dismissal of state Human Rights Act claim as the defendant university was immune from suit in federal court).

As for Plaintiff's breach of contract claim, the Court agrees with Defendant that Plaintiff confuses state sovereign immunity with Eleventh Amendment immunity. Under controlling Eighth Circuit precedent, a state's general waiver of sovereign immunity from litigation in state court is insufficient to waive Eleventh Amendment immunity from litigation in federal court; "the state must specify an intent to subject itself to federal court jurisdiction." Santee Sioux Tribe of Neb. v. Nebraska, 121 F.3d 427, 431 (8th Cir. 1997); Cooper, 226 F.3d at 968–69; see also Alexander v. University of Arkansas, 116 F.3d 480 (8th Cir. 1997) (affirming dismissal of breach of contract action, finding the state was the real party in interest for Eleventh Amendment purposes).

Because none of the exceptions to Eleventh Amendment immunity apply, the Court concludes that Plaintiff's federal and state law claims are barred by Eleventh Amendment immunity and the Court lacks jurisdiction to hear them.

**Alternative motion to dismiss**

Defendant argues in the alternative that Plaintiff's due process claim fails as a matter of law because she received notice of the charges against her and an opportunity to respond, which is all that due process requires prior to termination of a public employee with a property interest in their job. (Doc. No. 24 at 10-11) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985)).

Procedural due process claims require a two-step analysis. First, a plaintiff must prove that as a result of state action, the plaintiff was deprived of some life, liberty, or property interest. Second, the plaintiff must prove that the state's deprivation of that interest was done without due process. Krentz v. Robertson Fire Prot. Dist., 228 F.3d 897, 902 (8th Cir. 2000). Here, Defendant appears to concede that Plaintiff has a property interest in her job; therefore, the only issue is whether she received the process that was due in connection with her termination. Riggins v. Board of Regents of the Univ. of Nebraska, 790 F.2d 707, 710 (8th Cir. 1986).

In her complaint, Plaintiff alleges Defendant deprived her of her property interest without due process of law by failing to afford her the process and procedures set forth in the University's Faculty Handbook. Plaintiff's argument is unavailing. In De Llano v. Berglund, 282 F.3d 1031 (8th Cir. 2002), the plaintiff asserted a § 1983 due process claim against university administrators alleging his termination as a tenured professor violated the University's internal procedures were violated. The Court rejected this argument "because federal law, not state law or [university] policy, determines what constitutes adequate procedural due process." Id. at 1035.

Moreover, here, Plaintiff's complaint that she was not afforded the opportunity to, inter alia, call supporting witnesses and cross-examine adverse witnesses, is unavailing because this type of formal process is not required prior to termination. See Raymond v. Board of Regents of University of Minn., 847 F.3d 585, 590 (8th Cir. 2017). In sum, Plaintiff's allegations, taken as true from her amended complaint, fail to state a claim for a pre-termination due process violation.

As for Plaintiff's prayer for attorney's fees under Count III (breach of contract), in Missouri, under the traditional American rule, "parties must ordinarily bear their own attorneys' fees." Avante Intern. Technology, Inc. v. Sequoia Voting Systems, Inc., No. 4:10-CV-00799 AGF, 2011 WL 839631, *5 (E.D. Mo. Mar. 7, 2011) (quoting Alyeska Pipeline Serv. Co. v. Widerness Soc'y, 421 U.S. 240, 247 (1975). Attorney's fees are not recoverable from another party in a breach of contract action, except when allowed by contract or statute. Trim Fit, LLC v. Dickey, 607 F.3d 528, 532 (8th Cir. 2010) (citing Essex Contracting, Inc. v. Jefferson County, 277 S.W.3d 647, 657 (Mo. banc 2009)); see also Soto v. Midstates Millwork, Inc., 786 S.W.2d 229, 232 (Mo. Ct. App. 1990) (citing Williams v. Gulf Coast Collection Agency Co., 493 S.W.2d 367, 370 (Mo. Ct. App. 1973)). Plaintiff has not alleged any exception to the general rule that parties bear their own attorney's fees and thus fails to state a claim for attorney's fees.

### IV. Conclusion

For these reasons, Defendant's motion to dismiss will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [23] is **GRANTED**.

A separate order of dismissal will accompany this Memorandum and Order.

- 13 -

Dated this 21st day of July, 2017.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**